CECIL BERRY, a Minor, by Next Friend, DAVID W. HILL, v. ST. LOUIS, MEMPHIS & SOUTH-EASTERN RAILROAD COMPANY, Appellant.

Division One, November 25, 1908.

1. **DISMISSAL AS TO ONE DEFENDANT: Not Shown by Abstract.** Where appellant's abstract does not show a dismissal as to another railroad company made a codefendant at the institution of the suit for damages sustained on appellant's turntable, but does not purport to be a full transcript of all the record entries, and plaintiff does not furnish a counter or additional abstract, yet if the record shows that said codefendant took no appeal, that no judgment was rendered against it, that no proof was offered tending to show that plaintiff was injured through its negligence or that it owned or operated the railroad to which the turntable was appurtenant, the appeal will not be dismissed or the judgment reversed, because, first, absent a record showing one way or the other, the presumption is in favor of the regularity of the judgment, and, second, if appellant is liable at all it is liable for the whole harm done, even though its codefendant may also be liable.

2. **TORT: Liability of All Tortfeasors.** If two or more railroad companies negligently injure plaintiff, each is liable for the whole damage done.

214 Sup.—38

3. **NEXT FRIEND: Appointment: Proof.** The issue of the appointment of a next friend cannot be raised by a mere general denial, and where the answer is a general denial there is no call on plaintiff to prove the appointment of his next friend. Where the petition alleges a given person is a lawfully appointed and duly qualified next friend, and there is no specific denial of that averment, it will be taken as admitted.

4. **EXCESSIVE VERDICT: $6,583.33.** The right ankle of the four-year-old boy was smashed, all the bones immediately above the ankle were splintered, the foot was left connected with the leg by a mere ligament, no perfect union of the broken bones was formed, and he is left a deformed cripple for life. *Held*, that a verdict for $6,583.33 was little enough.

5. **CONTRIBUTORY NEGLIGENCE: Four-Year-Old Child.** A four-year-old child cannot be guilty of contributory negligence, and the court should so declare as a matter of law.

6. **IMPUTED NEGLIGENCE.** The negligence of a parent is not, in the infant's suit, to be imputed to the child as a bar to the liability of a negligent defendant. The doctrine of imputed negligence is harsh and unsound when applied to an infant who sues in its own right.

7. **———: Assumed by Plaintiff: Theory of Trial.** Although plaintiff's own instruction assumed that the negligence of the mother was imputable to the plaintiff child, and put the case to the jury on that theory, the suit will not be considered on that theory on defendant's appeal. Such instruction was more favorable to defendant than it was entitled to, and is not error of which it can take advantage.

8. **TURNTABLE: Trespasser: Child: Liability.** Where defendant railroad company permitted its turntable, a dangerous machine and easily turned, and attractive to children, to remain unguarded and unlocked for a long time and knew that children habitually resorted to said place and used the turntable as a plaything, it is liable for injury to a child four years old, whose ankle, as the turntable was being revolved by the other children and he was riding round on it, was caught between a rail on the table and a rail on the spur track, although such child and the other children were trespassers. Such a machine is an attractive nuisance, and an implied invitation to children to play upon it.

Appeal from Butler Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*W. F. Evans* and *James Orchard* for appellant.

(1)  We are aware of the attitude this court has taken in turntable cases, and that it is negligence *per se* to leave a turntable unlocked or unguarded, for the reason that the same was attractive to children to go upon and play, and also the Supreme Court of the United States has in one case ruled the same way. The doctrine, though, as this Court has remarked heretofore, has been very much modified in most of the States and also in this State.   Our position in this case is that the courts in the different States holding that doctrine have followed blindly the decision of the United States Supreme Court without giving any intelligent reason for so doing.  We  think the greater weight of authority is with the courts in the different States who have declared against the rule and think they give the best reasons for their finding, and that their finding is based on better reason and common sense.   Barney v. Railroad, 126 Mo. 387; Ruschenberg v. Railroad, 109 Mo. 112; Walsh v. Railroad, 145 N. Y. 301; Morrissey v. Prov. W. P. Co., 1 N. E. 806; Ostertag v. Railroad, 64 Mo. 421; Moran v. Pullman Car Co., 134 Mo. 641; Overholt v. Vieth, 93 Mo. 422; White v. Stifel, 126 Mo. 295.    (2)   The negligence of parents in permitting or instructing children of tender years to go upon a turntable or any other dangerous place is negligence on the part of the parents, and such negligence is imputable to the child, and no recovery can be had.    Stilson v. Railroad, 67 Mo. 671; 3 Elliott on Railroads, sec. 1259; Railroad Bill, 81 Ill. 76; Railroad v. Bockoven, 36 Pac. 322.

*Nathaniel C. Whaley* and *David W. Hill* for respondent.

(1)  Defendant maintained the turntable unlocked and not otherwise secured, an attractive and dangerous machine in a populous place, adjoining public

highways, where children frequented to play around and upon the table, to defendant's knowledge, and the defendant thus failed to exercise that care which ought reasonably to be expected from an ordinarily prudent person under the same circumstances, and is therefore liable. 2 Thompson, Negligence, sec. 1827; Watson on Damages, sec. 235; Webb's Pollock on Torts, pp. 46, 47, 48, 565 and 566; Whitaker's Smith on Negligence, p. 63, and note; Nagel v. Railroad, 75 Mo. 653; Koons v. Railroad, 65 Mo. 592; Dwyer v. Railroad, 12 Mo. App. 597; Newcomb v. Railroad, 169 Mo. 428; Kelley v. Parker-Washington Co., 107 Mo. App. 494; Railroad v. McDonald, 152 U. S. 262; Railroad v. Stout, 17 Wall. (U. S.) 657; Barrett v. Railroad, 91 Cal. 296; Callahan v. Railroad, 92 Cal. 89; Ferguson v. Railroad, 75 Ga. 637; Railroad v. Fitzsimmons, 43 La. Ann. 63; Keffe v. Railroad, 21 Minn. 207; Bridger v. Railroad, 27 S. C. 456; Evanisch v. Railroad, 57 Tex. 126; Railroad v. Styron, 66 Tex. 421; Railroad v. McWhirter, 77 Tex. 356; Brinkley Car Co. v. Cooper, 60 Ark. 545; City of Pekin v. McMahon, 154 Ill. 141; Siddall v. Jansen, 168 Ill. 43; Penso v. McCormack, 125 Ind. 116; Price v. Water Co., 58 Kan. 551; Bransom's Admr. v. Labrot, 81 Ky. 638; Powers v. Harlow, 53 Mich. 507; Mackey v. City of Vicksburg, 64 Miss. 777; Harriman v. Railroad, 45 Ohio 11. (2) The plaintiff having been of such tender age (four years), the law conclusively presumes him incapable of discretion, and refuses to impute to him contributory negligence. Fink v. Furnace Co., 10 Mo. App. 75. (3) The fact that another child revolved the turntable does not relieve the appellant who failed to use due care in locking or otherwise securing the table. Nagel v. Railroad, 75 Mo. 661; Becke v. Railroad, 102 Mo. 547; Stotler v. Railroad, 200 Mo. 143.

LAMM, J.—In the Butler Circuit Court, Cecil Berry, a child of four years, sued by his next friend in an action sounding in tort.    He had judgment for $6,583.33, for personal injuries received on defendant's turntable.    Failing to get a new trial or arrest the judgment, defendant appeals.

I.    The St. Louis & San Francisco Railroad Company was made a codefendant at the institution of the suit.    Appellant insists that the cause was not dismissed as to its said codefendant; *contra,* respondent insists it was so dismissed prior to submission. Appellant's abstract does not show a dismisal, neither does it purport to be a full transcript of all the record entries; neither does respondent furnish a counter or additional abstract.    In this fix, with no claim that a full transcript of the record entries is here and with no counter abstract furnished, the parties litigant assert, in their respective statements of the case, on the one hand there was no such dismissal and on the other that there was a dismissal.

The record sufficiently shows the St. Louis & San Francisco Railroad Company took no appeal.    It shows affirmatively that no judgment was rendered against it, that there was no proof offered tending to show Cecil was injured through its negligence or that it owned or operated the railroad to which the turntable was appurtenant.    The instructions show that no issue was submitted to the jury touching the liability of the St. Louis & San Francisco Railroad Company. To the contrary, the issues submitted involved appellant by name, and appellant only.

As we see it, while appellant complains in its statement of the above condition of the record, yet it does not in its brief proper press the point as reversible error.    However, if it does, the position is unsound; because:

(a)     Absent a record showing one way or the other, the presumption is in favor of the regularity of the judgment of a court of general jurisdiction— *i. e.,* a dismissal would be presumed, or that such antecedent steps were taken as made a judgment against one of two defendants regular.

(b)     Moreover, at the very worst on the record before us the matter complained of does not a particle affect the rights of the appellant on the merits of the case.     If it is liable at all it is liable for the whole harm done the child.     Therefore, the presence or absence of its codefendant as a party to the judgment or to the suit cuts no figure on the merits; for it is primer law that if A and B negligently injure C, C may recover his damages from one or the other or both.     [Newcomb v. Railroad, 169 Mo. 409.]   "A person," says Bishop (Bishop on Non-Contract Law, sec. 573) "who has done any part of a wrong working harm to another, or even contributed his will to do it, is responsible to him in damages for the entire harm, however many other individuals, forces and things may have co-operated in bringing about the mischief." [Neff v. City of Cameron, 213 Mo. 350.]

The matter complained of is no concern of appellant, it causes its liability to neither shrink nor swell, wax nor wane.     It impairs appellant's defenses not a whit.     It is ordained by statute that only harmful error will work a reversal.     Before we can reverse a judgment, we must "believe that error was committed by such court against the appellant or plaintiff in error, and materially effecting the merits of the action."     [R. S. 1899, sec. 865.]

Not believing such to be the case, the point, if point it be, is ruled against appellant.

II.     As one ground for arresting the judgment, it was alleged in the motion for arrest there was no proof offered that the Hon. David W. Hill was duly

appointed next friend.   This is so.   Appellant assigns
error in overruling the motion in arrest.   Counsel
do not press the point in hand as reversible error,
as we gather from their brief.   But if we are mistaken
in this, there is no soundness in it.   This is so, be-
cause:

The answer was a general denial coupled with
affirmative allegations not material to the question
now up.   With the pleadings in this fix, was there a
call for respondent to prove the due appointment of
his next friend?   The answer to that query is, No. Un-
doubtedly the general rule is that a general denial
puts plaintiff on his proof.   But there are exceptions
grafted on the stock of the general rule and the par-
ticular in hand is controlled by one of them.   In the
philosophy of the science of pleading, the issue of the
appointment of next friend cannot be raised by a mere
general denial.   If the defect struck at appears in the
petition it might (possibly) be raised by special demur-
rer.   Otherwise, it should be raised by a special plea
in the answer.   Therefore, it is the established prac-
tice that where the petition alleges a given person is
a lawfully appointed and duly qualified next friend
and there is no specific denial of that averment, it
will be taken as admitted.   This is so whether proof
was introduced to sustain it or not.   The precise ques-
tion, once mooted and for a season troublesome, was
exhaustively considered and finally settled and put at
rest In Banc in Baxter v. Railroad, 198 Mo. 1 (q. v.).

The point is ruled against appellant.

III.   There is no question raised on the pleadings.
There is no question made on the size of the verdict.
If defendant is liable at all, the compensation awarded
was little enough.   Cecil's right ankle was smashed.
All the bones of the leg immediately above the ankle
were splintered.   The foot was left connected with the
leg by a mere ligament, or strip of flesh.   The injury

was such a capital one that a perfect union of the bones was not formed and he is left a deformed cripple for life. Moreover, there is (and could be) no question raised of the contributory negligence of the child. A child may be of such an age that whether he is or can be guilty of negligence under the circumstances of a given case is a question of fact for the jury, and such is the usual case. He may have arrived at such degree of maturity in age and judgment that the court might say as a matter of law he could be guilty of contributory negligence. On the other hand, he may be so tender in age and infantile in judgment that the court as a matter of law might rule he could not be guilty of contributory negligence in the circumstances of a given case. This child, under the facts here, came within the latter class. He was *non sui juris*. [Holmes v. Railroad, 190 Mo. l. c. 105, *et seq.;* Cornovski v. Railroad, 207 Mo. l. c. 273, *et seq.;* Donahoe v. Railroad, 83 Mo. l. c. 565; Frick v. Railroad, 75 Mo. l. c. 608; O'Flaherty v. Railroad, 45 Mo. l. c. 74.]

IV. Before considering other questions raised, it will be useful to shortly state the facts, viz.:

It was alleged in the petition and admitted by the answer that defendant owned and operated a railroad, and turntable appurtenant, in the city of Poplar Bluff, on the 24th of March, 1904, and that Cecil was hurt on said turntable on said date.

It was alleged in the petition and shown by the proof that this turntable was not isolated, but was located in an open place adjoining public highways in said city and which place was used as a playground for children, either passing on their way to and from a near-by public school, or otherwise attracted there. That the table was on defendant's private property, was not kept fastened, enclosed or guarded in any way so as to bar the ready access of children to it, or their use of it. That it was a most dangerous contrivance for

a child to play with; that it had been left unfastened and unguarded for several months prior to the accident and during that time the town children openly resorted to it and played with it by revolving it and riding thereon as a sort of "merry-go-round;" and that defendant either knew or by the exercise of ordinary care and caution could have known this was so. The uncontradicted proof also shows that the table was so poised and adjusted as to be easily manipulated by little children; that its plan contemplated it should be kept locked, but this precaution had been abandoned by defendant; that Cecil lived with his parents about 184 feet from it; that there was no fence or other barrier between his home and it except a single railroad track on level ground; that on the day in question he went there, with his little brother five years old, and a lad (named Barth) about fifteen years old, to play on the turntable; and that while Barth was revolving it and Cecil was riding round on it his ankle was caught between one of the rails on the table and a rail on a spur track leading to it and ruined as aforesaid.

It was alleged in the answer and denied by some of plaintiff's witnesses, but defendant introduced evidence tending to show, that Cecil's mother told Barth to take the children to play on the turntable. Defendant also put in proof tending to show that the child was allowed by its parents to play there at other times. *Contra,* plaintiff put in proof tending to show those things were not true. The turntable is not fully described in the record, but it seems to have been an ordinary, heavy, railroad turntable, used to turn locomotives end for end, and one witness said it looked like a "flying jenny," whatever that may be.

On the facts thus outlined, plaintiff asked but one instruction following closely the allegations of the petition and the proof. In that instruction plaintiff put it to the jury to find that he was injured without

the fault of his parents.    The triers of fact were told that before they could find for plaintiff they must find that he went to the turntable without the knowledge and consent and against the wishes of his parents. The court also gave for defendant an instruction which imputed the negligence, if any, of the parents to plaintiff and they were flatly told that if the parents were negligent the plaintiff could not recover.

The court refused to instruct that if Barth and plaintiff's little brother were negligent in taking Cecil to the turntable and putting it in motion, then plaintiff could not recover; and refused instructions which told the jury that plaintiff was a trespasser and there was no liability, if the turntable was located on the private property of defendant away from any public thoroughfare or place and was constructed in the usual way and used in the railroad business of defendant and to which Cecil had no access except by going across defendant's main railroad track and onto its private property, if he went there without the permission of defendant.    That if plaintiff's mother put him in the custody of Barth with the general direction to go and play there and if Barth took plaintiff and his brother to the turntable and put them on it and put the table in motion and caused the injury, then the verdict must be for defendant.    By still other instructions the defendant asked the court to declare as a matter of law that plaintiff could not recover.

It is not necessary to swell the case by setting out the instructions in full, because the main propositions relied on by appellant may be crystallized into two, viz.:

(1)    That the doctrine of those cases in this court, known to the bar as the turntable cases, is unsound and we are asked to explode it.

(2)    The other proposition is outlined by defendant's counsel as follows:

"The case was tried on the theory that if a child was sent there by the mother, the negligence of the mother in sending the child was imputable to the child. The position of the defendant is, and was at the time of the trial, that although she might not have sent her children there, yet she placed them in the hands of this witness, Charley Barth, and he took them there. He says he took them by her instructions, and she, of course, denies that, but the defendant takes the position that although she might not have directed he take them there, yet he did take them there and had them in charge and put them on the turntable, and he started the turntable in motion and caused the injury; that any act of his in placing the children on the turntable and putting it in motion was negligence on his part and imputable to plaintiff, and, therefore, the plaintiff is not entitled to recover."

It will be seen, therefore, that both propositions are here for determination.    Is either sound?

(a)  **Of imputed negligence.**   The proposition that the negligence of the parent (or another) may be imputed to the child as a bar to liability on the part of a negligent defendant, in the infant's suit, has received full and new consideration at the hands of this court in a very late case.   [Neff v. City of Cameron, *supra*.]   In that case we were asked to re-examine and alter the position of this court on that question.    The result was that we refused to subscribe to the notion that the negligent sins of parents (or third parties) may be visited on the head of an innocent child in adjudicating the rights of the child itself.   If parents sue in their own right to recover damages for injury to their child, a negligent defendant may defend by proving their concurrent negligence, but such doctrine is unsound and harsh when applied to the infant who sues in its own right.   I may not avoid liability by saying: "I was negligent, it is true.   If I

had not been negligent the child would not have been injured. But a third person—a parent, a nurse, a maid, a grandmother—contributed to the injury of the child and therefore I am not liable.'' On the reasoning of the Neff case, and controlled by our former adjudications therein cited, refusing to impute the negligence of the parent to the child, the point is ruled against appellant.

And this should be so although plaintiff's own instruction was more favorable to defendant on that score than is the written law. Such excess of favor, in taking on and carrying an unnecessary burden, is not error of which a defendant (so favored) may take advantage. To allow a litigant who has had the advantage of his antagonist's assuming unnecessarily a laboring oar, to bottom a right on appeal on that advantage, would be the same as if B, distanced in a foot race, would challenge the event because A, who won the money, chose to carry weight in the sprint or was too fat to run well.

(b) Of the turntable cases. The doctrine of these cases is based on an exception to the general rule of law that the land-owner owes no duty to trespassers or volunteers, going upon his land for their own purposes, to maintain it in any particular condition for their benefit.

Those courts maintaining the exception have shown an observable ingenuity (but have not been uniform), in formulating the principles underlying the exception. In some instances the exception has been bottomed on the wise Latin maxim of Lord COKE [9 Coke, 59], *prohibetur ne quis faciat in suo quod nocere possit alieno*—which, under the liberal gloss of a scholar, is said to mean that, "It is prohibited for one to do on his own property that which may injure another's.'' Again, the exception has been maintained

under the law of nuisance.    Generally speaking, if a
nuisance is created, and any one is injured by the nui-
sance in any particular manner, and not in common
with the public, an action of negligence will lie. [Webb's
Whittaker's Smith on Negligence (2 Ed.), pp. 73-4.]
Now, a dangerous machine like a turntable, easily
manipulated by children, has been said to be "an *at-
tractive* nuisance" as to them, when exposed in a pub-
lic and unguarded place where they resort, and when
the *scienter* (as here) is clearly shown.

In 1873 the Supreme Court of the United States
held in judgment a case in which a child was injured
on an unguarded and unlocked turntable located in
a public place where children resorted with the knowl-
edge of defendant railroad.    [Railroad v. Stout, 17
Wall. 657.]    The child was technically a trespasser.
At the trial on the circuit, DILLON, circuit judge, among
other charges to the jury charged as follows:

"The machine in question is part of the defend-
ant's road and was lawfully constructed where it was.
If the railroad company did not know, and had no good
reason to suppose, that children would resort to the
turntable to play, or did not know, or had no good
reason to suppose, that if they resorted there they
would be likely to get injured thereby, then you can-
not find a verdict against them.    But if the defendants
did know, or had good reason to believe, under the
circumstances of the case, that the children of the place
would resort to the turntable to play, and if they did
they would or might be injured, then, if they took no
means to keep the children away, and no means to
prevent accidents, they would be guilty of negligence,
and would be answerable for damages caused to chil-
dren by such negligence."

That charge was held a proper statement of the
law by the Supreme Court of the United States (see,
also, Railroad v. McDonald, 152 U. S. 273-4), and we

see nothing wrong with it.    It seems to us good law and good ethics.    To hold otherwise would be to exalt mere money and property and put down humanity— would be to offend against little ones, and there is high authority for the proposition that it were better that a millstone were hung about the neck for drowning purposes than that such offense be given.    In some cases it is said that considering the instincts and the curiosity of a little child the principle that protects him in the turntable cases is the same that protects my turkeys against being tolled by grains of corn into my neighbor's trap, and protects my dog against being tolled by scented meat into a like fix.

The Stout case was put somewhat upon Lynch v. Nurdin, 41 E. C. L. 422, 1 A. & E. (N. S.) 29.    In the Lynch case defendant's carman left his horse and cart standing in the street for about half an hour without any person to take care of them.    Plaintiff, a lad of about seven years, with several other children, was playing with the horse and around the cart.    Plaintiff got on the cart.    Another boy lead the horse on while plaintiff was attempting to get off the shaft. The plaintiff fell, was run over by the wheel, and his leg broken.    In sustaining the judgment Lord DENMAN, C. J., among other things, said:    "The most blamable carelessness of his [defendant's] servant having tempted the child, he ought not to reproach the child with yielding to that temptation.    He has been the real and only cause of the mischief."    The Lynch case has been followed as sound law by later English cases. In Harrold v. Watney, L. R. 2 Q. B. Div. (1898) l. c. 322, SMITH, L. J., said:    "That case [the Lynch case] has never been overruled, but has been treated in subsequent cases as sound law."    In McDowall v. Railroad, L. R. 1 K. B. Div. (1902) l. c. 624, KENNEDY, J., who delivered the judgment, quoted approvingly from Lynch v. Nurdin.    So did LEONARD, J., in Morgan v.

Cox, 22 Mo. l. c. 378.   WAGNER, J., cited it with approval in Boland v. Railroad, 36 Mo. l. c. 491.   See, also, Walsh v. Transportation Co., 52 Mo. l. c. 439. In the McDonald case, *supra,* Mr. Justice HARLAN, for the Supreme Court of the United States, re-examined the doctrine of the Lynch case and reaffirmed it.   It was there suggested that the case had been repudiated in the English courts.   But Justice HARLAN questioned the correctness of that criticism.   He pointed out that the English case relied on to sustain it (Mangan v. Atterton, L. R. 1 Ex. 239) had in turn been questioned by Lord Chief Justice COCKBURN in Clark v. Chambers, L. R. 3 Q. B. Div. 327.

Other cases sustaining the exception have put liability somewhat on the ground of enticement, allurement and implied invitation.   [Keffe v. Railroad, 21 Minn. 207.]   In the course of the opinion in the Keffe case it was said, *arguendo:*   "Now, what an express invitation would be to an adult, the temptation of an attractive plaything is to the child of tender years. If the defendant had left this turntable unfastened *for the purpose* of attracting young children to play upon it, knowing the danger into which it was alluring them, it certainly would be no defense to an action by the plaintiff, who had been attracted to the turntable and injured, to say that the plaintiff was a trespasser, and that his childish instincts were no excuse for his trespass. . . .   It is true that the defendant did not leave the turntable unfastened *for the purpose* of injuring young children; and if the defendant had no reason to believe that the unfastened turntable was likely to attract and to injure young children, then the defendant would not be bound to use care to protect from injury the children that it had no good reason to suppose were in any danger.   But the complaint states that the defendant knew that the turntable, when left unfastened, was easily revolved;

that, when left unfastened, it was very attractive, and
when put in motion by them, dangerous to young chil-
dren; and knew also that many children were in the
habit of going upon it to play.    The defendant, there-
fore, knew that by leaving this turntable unfastened
and unguarded, it was not merely inviting young chil-
dren to come upon the turntable, but was holding out
an allurement, which, acting upon the natural instincts
by which such children are controlled, drew them by
those instincts into hidden danger.''

The exception to the general rule has been allowed
as good law in this State in Koons v. Railroad, 65 Mo.
592; Nagel v. Railroad, 75 Mo. 653—both turntable
cases—and has been allowed by courts of last resort
in many States. For instance, in California, Nebraska,
Kansas, Iowa, Washington, Tennessee, Georgia, Louis-
iana, South Carolina, Texas, Arkansas, Illinois, Indi-
ana, Kentucky and Mississippi. [See, authorities cited
in respondent's brief.    See, also, a leading article in
vol. 66, Central Law Journal, p. 137 et seq., by Mr.
Kenner.]

Mr. Kenner (happily it seems to me) lays down
the following sensible rules as based upon reason and
supported by the decided weight of authority:

''A railroad company is liable for injuries to tres-
passing children playing upon its turntables, when
the same have been left unlocked and in a public
neighborhood where children would reasonably be ex-
pected to play.    The most logical opinions so holding,
are based upon the following grounds and reasons:
(1)    A turntable is a dangerous machine, created by
the act of its owner; it is attractive to children and
if publicly located and kept unlocked is a nuisance.
(2)    It can be easily locked and made safe when not
in use.    (3)    A turntable, existing under the above-
named conditions, is an inducement and implied invi-
tation to children and hence when injured thereon,

they cannot be treated as voluntary trespassers.    (4) Taking into consideration the childish instincts of children, a turntable existing under the above conditions acts as an allurement into a hidden danger or trap.''    [1 Thomp. on Negligence, sec. 1036, *et seq.; Ibid,* vol. 2, sec. 1827.]

That the doctrine of the exception to the general rule is unsound has been maintained by courts of last resort possibly in Pennsylvania, New Jersey, Ohio, New Hampshire, New York, Massachusetts, Virginia and Michigan—though it had the support of a great judge, Cooley, in an early case in the Supreme Court of Michigan.    The latest case coming under our eye is Railroad v. Harvey, 77 Ohio St. 235, and the prying legal mind may find in that case all the authorities marshalled pro and con.    A review of those authorities led that learned court to overrule, in effect, some of its own earlier cases.    But we are not prepared to admit that the doctrine underlying the turntable cases is odious to justice, or unsound in principle, and therefore we shall not overrule Nagel v. Railroad and Koons v. Railroad, *supra.*

This defendant in violation of the law, as written by this court, in a city of four or five thousand souls, permitted a dangerous machine, attractive to children as a plaything, to remain unguarded and unlocked for a long time at a place to which children habitually resorted and upon which machine they were permitted to play without defendant's lifting a finger to prevent it.    The facts of the case amount to an invitation to children to use the machine.    Under such circumstances it violated its social duty and we shall not help it to escape liability.

We see no reversible error, and the judgment is affirmed.    All concur.