EMMA S. CADMUS, BY HER NEXT FRIEND, Respondent, *v.*
ST. LOUIS BRIDGE AND TUNNEL COMPANY, Appellant.

### January 29, 1884.

1. EVIDENCE — WITNESSES. — A child who is capable of receiving correct
   impressions of facts and of relating them truly, is competent to testify.
2. —— That a child otherwise competent, has never received religious in-
   struction, does not disqualify him as a witness.
3. PRACTICE — INSTRUCTIONS. — If the instructions given are not set out in
   the bill of exceptions the instructions refused will not be reviewed on
   appeal.
4. —— DEMURRER TO EVIDENCE — WAIVER. — The defendant waives his
   demurrer to the evidence by presenting his own case.
5. NEGLIGENCE — CONTRIBUTORY. — The negligence of the parents of a child
   who is injured may be imputed to the child who, by reason of tender
   years, can not be guilty of negligence.
6. —— Contributory negligence of the plaintiff will not prevent a recovery,
   if the defendant could, by the exercise of reasonable care, have seen the
   danger and avoided the injury.
7. PRACTICE — INFANTS — NEXT FRIEND. — In an action by an infant, by
   next friend, want of evidence of appointment of the next friend can not
   be taken advantage of on appeal where it has not been specially set up
   in the answer or raised by demurrer.

APPEAL from the St. Louis Circuit Court, BARCLAY, J.
*Affirmed.*

S. M. BRECKINRIDGE and MILLARD F. WATTS, for the
appellant : There is no proof to sustain the allegation of the
appointment of next friend. — *Porter* v. *Railroad Co.*, 60
Mo. 160 ; *Sherman* v. *Railroad Co.*, 72 Mo. 60. The de-
murrer to the evidence should have been sustained. —
*Henry* v. *Railroad Co.*, 76 Mo. 282 ; *Powell* v. *Railroad
Co.*, 76 Mo. 83 ; *Commissioners* v. *Clark*, 94 U. S. 284.
The contributory negligence of the plaintiff was such as to
prevent a recovery. — *Cauley* v. *Railroad Co.*, 95 Pa.
St. 398 ; *Moon* v. *Railroad Co.*, 99 Pa. St. 301 ; *Stillson*
**v.** *Railroad Co.*, 67 Mo. 671.

M. J. SULLIVAN and L. R. TATUM, for the respondent: Proof of the appointment of next friend is unnecessary. — *Jones* v. *Steele*, 36 Mo. 324; *Robinson* v. *Hurd*, 67 Mo. 660; *Rodgers* v. *Marsh*, 73 Mo. 64. Though the plaintiff was guilty of some negligence which remotely contributed to the injury, yet, if the defendant, by the exercise of ordinary care, could have prevented the injury, it is liable. — *Burnham* v. *Railroad Co.*, 56 Mo. 338; *Megher* v. *Railroad Co.*, 59 Mo. 223; *Walsh* v. *Telegraph Co.*, 52 Mo. 434; *Harlan* v. *Railroad Co.*, 65 Mo. 22; *Frick* v. *Railroad Co.*, 75 Mo. 597.

BAKEWELLL, J., delivered the opinion of the court

This is an action brought by a minor, by her next friend, for damages for injuries done to her by being struck by a locomotive of defendant, operated by the servants of the defendant. The answer of the defendant was a general denial. There was a verdict and judgment for the plaintiff for $1,000.

The testimony is voluminous, and, in many important respects, quite contradictory. There was testimony tending to show the following state of facts: —

The plaintiff, who was a girl about five years old at the time of the accident, lived with her parents in one of a row of houses on the east side of Tayon Avenue, south of Clark Avenue. The lots on which this row of houses was erected were each about fifteen feet in width, and ran back east one hundred and fifty feet to the yard of the defendant, which seems to have occupied the remainder of the block from Poplar Street on the south to Clark Avenue on the north. These lots were fenced on the east end. This fence left a narrow passage-way between the tracks of the defendant, which passage was extended south to Poplar Street. The house north of the Cadmus house was occupied by a Mrs. Brown. The fence of this lot had been knocked down by a locomotive of the defendant and put up again by the defendant in such a way that it stood a

little back from the true eastern end of the Brown lot. The distance between the rails of the defendant's track and the Brown fence was about two feet and a half, and the defendant's track made a curve towards Tayon Avenue about that point. Neither side offered in evidence any plat of the ground. The distances were often indicated by the witnesses by gestures and by reference to distances in the court-room, and, as the matter was referred to again and again in the direct and cross-examinations of several witnesses, it is difficult to make a statement of the exact lie of the ground which will in all respects satisfy everything that was said about it. On the morning of the accident, which was in September, the street in front of the Cadmus house was being torn up for the reconstruction of the bridge over the railroad tracks, and the sidewalk was partly torn up for the purpose of laying gas pipes, and partly incumbered by material for the bridge. According to the testimony for the plaintiff, it was quite impassable, except by methods that were dangerous for any but very active persons, and the Cadmus children had been directed by their parents to go out by the back way because of this dangerous condition of the sidewalk. The youngest child, the plaintiff here, was going to a school on Fifteenth and Pine Streets, northeast from the house in which she lived. It would have been possible to reach the school by going along the back fence to Poplar Street on the south and then to Clark Avenue on the west, and thus to have avoided the crossing at which the plaintiff was hurt; and by going this roundabout way and keeping close to the fence, danger from the locomotives might have been avoided. The plaintiff set off to school with her elder sister Tilly, a child of about eleven. Tilley is the only witness who saw the accident, and her testimony as to what occurred is as follows, when thrown into narrative form : —

" Emma received the cut across her forehead from the engine which was coming from Clark Avenue ; we were

right by Mrs. Brown's fence. Mrs. Brown lives in the corner house. The engine was backing from Clark Avenue. I sent my little sister through first, and I went through after. She wasn't half through when the engine came and struck her — through that fence, at the corner — right at the corner there. The engine struck her right here, on the back part of the head. She couldn't do nothing. She fell against the fence. I picked her up and carried her to the gate. No one else was around that I seen. It was just about that far (measuring) from the corner of the fence to the track where we were going through. She was all bleeding; the blood was all over her face. Her body was all bruised up, black and blue on this (the right) side. The engine was number 5. I saw the number. It switches there. Question. State whether you heard a noise up the track just before the little girl was struck? Answer. No, I did not. There was no bell ringing, nor anything else. Q. State whether or not you saw any person on the engine? A. There was no brakeman; not that I seen. Q. What was with the engine? A. There were some box cars on it." On cross-examination, the witness said, in reference to her expression about sending her sister " through first: " " I wanted her to go first — to go through by the side of the fence — by the track. I mean I sent her in between the iron rails and the fence, through that narrow way first, before me, because I wanted her to go through first. Of course there was trouble there. If the engine came down, some one might get killed, and so I sent her through first, and stood and watched her. She was not half way through when the engine came. I was going just behind her. The part above the steps struck her. It knocked her against the fence. The engine was backing out from Clark Avenue."

It appears from this statement that the two children turned to the left on leaving their back gate, and were making for Tayon Avenue between the fence and the track when plaintiff was caught in the middle of the narrow passage,

about fifteen feet long, between the Brown fence and the track, just beyond the point where the track makes a curve, as will more plainly appear from the following tracing: —

It further appears from the testimony that the engine in question had just gone up towards Clark Avenue, pushing these flat cars which it had left, and it was returning "light," or without any cars attached, as all the witnesses say, except the one whose testimony has just been set down.

The engine had its regular "crew," according to the defendant's witnesses, of five or six men needed for the work in which it was engaged. The fireman and engineer were at their places ; the foreman was standing on the pilot of the engine, which, as the engine was reversed, was then the hind part. He was looking in the direction in which the engine was going. The other men were together on the front of the engine, which was really the back part at the time of the accident, as it was going backwards. The engine was a transfer engine, made for use in the tunnel, with a low, sloping tender and a headlight at each end. The engineer and fireman could see in either direction. None of the men on the engine saw the children except Whalen, the fireman. He says he saw them in the passage-way between Brown's fence and the track, but gave no signal, because he thought they were in no danger. The engine was going slowly — about two or three miles an hour. No witnesses swear positively that the bell was ringing, though some of the defendant's witnesses say that it was the custom to ring the bell. One witness for the defendant says he did not notice whether it was ringing or not, and one witness says that he thinks he would have noticed it if the bell was not ringing, and that he does not remember that it was not ringing.

It is clear from all the testimony that a man, or even a child, caught in the narrow passage fifteen feet long, between the Brown fence and the rails of the defendant's track, must, almost necessarily, have been struck by the engine. The distance from the fence to the rail was only thirty inches. The testimony is that the projection of a car over the rail is twenty-two inches, so that only about eight inches would be left clear between a car and the fence. The exact projection of this locomotive is nowhere stated, so far as I remember. I have read the entire testimony. There is nothing to show that the steps of the locomotive do not project as far as those of a car. A witness for the defendant

states that there would not be room for a man between the
fence and a passing engine, and it appears from the testi-
mony of Matilda Cadmus that one could not get close up to
the fence owing to "little bits of logs sticking up against
the fence there, right at the side." This little passage-way
belonged to the Brown lot, but when the Brown fence was
knocked down by the defendant, the defendant replaced it,
a little back from its original position, to give more room
for the passage of the defendant's cars.

There was a great deal of testimony as to the trouble
given to the men in the yard by the Cadmus children and
other children playing on the cars, and stealing coal and
bananas in the yard. There was contradiction as to this,
as there was on almost every point throughout the testi-
mony. There was testimony for the defendant tending to
show that the plaintiff was of a scrofulous habit of body, but
for which the cut on her head would have been a very slight
affair. There was also testimony that the effects of the
wound were not entirely over at the time of the trial, that
the child was "looney" at times ever since, and that the
mark of the wound would remain to disfigure her.

With the weight of the testimony we are in no way con-
cerned; that was wholly for the trial court. The only
question for us to consider is whether there was substantial
evidence to support the verdict.

The witness, Tilly Cadmus, was examined as to her com-
petency as a witness, and at first rejected by the trial court;
but at a subsequent stage of plaintiff's case, and on further
examination, she was permitted to testify. We think that
she was clearly competent. She seems to have been a girl
of rather more than average quickness of mind. She was
eleven years old. I think it quite clearly appears that she
sufficiently understood the nature of an oath. She said that
a falsehood told on the witness-stand was much more grave,
or, as she expressed it, "a heap worse," than any ordinary

lie. She believed that God would not let her go to heaven if she gave false testimony. It is true that she did not know in what other way God would punish her for this; but neither, perhaps, do learned counsel, who examined the girl, know this; at any rate, I do not. She seemed to think that God perhaps might paralyze a person for swearing to a lie. This view of the power and providence of Almighty God can hardly be said to disqualify her; it rather shows that she has religious opinions, and no person is to be disqualified under the constitution of Missouri for religious opinion, or even for irreligious opinion. *Londenner* v. *Lichtenheim*, 11 Mo. App. 385. She went to Sunday-school, and could say half of the Lord's Prayer. This, of course, does not disqualify any one. The other objections of counsel go to the credibility of the witness, which was for the jury. The child was over ten years of age, evidently capable of receiving just impression of the facts, and of relating them truly; she is not therefore rendered incompetent by the statutory provision. Rev. Stats., sect. 4017; *The State* v. *Scanlan*, 58 Mo. 204.

Our attention is not called to any rulings of the court as to evidence to the prejudice of the appellant. Nor is it claimed that the court erred in giving the brief instructions asked on behalf of the plaintiff. Instructions asked on behalf of the defendant were refused, but we can not review this action of the court. Even if we should find that these refused instructions contained correct statements of the law applicable to the evidence, we could not reverse the judgment for their refusal, because it appears that the court gave instructions of its own motion not set out in the record. These instructions may possibly have covered everything that was lawful in the instructions refused.

At the close of the plaintiff's case, and at the close of the whole case, the defendant asked an instruction in the nature of a demurrer to the evidence. Whether the demurrer should have been sustained at the close of the plaintiff's

case, we need not inquire. If the defendant's counsel desired to make this point, he should have stood upon his demurrer. He did not do so, but introduced evidence on behalf of the defendant. The only question is, whether the court, at the conclusion of the whole case, was right in letting the plaintiff go to the jury. If there was no error in this, we can not interfere simply because we may think that, upon the evidence as presented to us, the trial court might very well have granted a new trial on the ground that the verdict was very much against the weight of the evidence. As the matter stands, if there was substantial evidence to support the verdict, we can not disturb the judgment.

It appears that the plaintiff and her elder sisters were in the habit of playing about the defendant's yard, and were used to locomotives. This evidence was introduced by the defendant, and there was certainly enough of it ; it occupies a large part of this record. It can not, we think, be considered that the parents of the child were guilty of such negligence as would have precluded a recovery had the child been killed, in allowing her to go to school in charge of an elder sister by the back way along the defendant's tracks, if, as we must under the testimony for the plaintiff, assume for the purposes of this case, the way by the front door was unsafe. In an action by the child for damages, the negligence of the parents, if the cause of the accident, might be imputable to the child, where the child, by reason of years, could be guilty of no negligence. *Stillson* v. *Railroad Co.*, 67 Mo. 671. But even if the parents were guilty of some negligence in allowing the children to go by the back way, and if Matilda Cadmus, in charge of the child, was guilty of some negligence in sending her into the way between the track and the fence, and if the little child herself were capable of, and guilty of, some negligence in going there, this was, under the evidence, a matter for the jury, under proper instructions from the court, and if the jury so found, they might still have found for the plaintiff,

if they believed from the evidence that the *causa causans* of the accident was not the negligence of the plaintiff, but that of the defendant. The defendant had no right to run the child down, if its servants saw, or by the exercise of proper diligence might have seen, the child, and might have stopped the engine in time to avoid the accident. *Frick* v. *Railroad Co.*, 75 Mo. 595; *Dwyer* v. *Railroad Co.*, 12 Mo. App. 597; *Neier* v. *Railroad Co.*, 12 Mo. App. 25; *s. c.*, *Ib.* 35.

There is testimony of the defendant's own witnesses that they might have seen the child had she been there. Several men on the engine say that she was not there or they would necessarily have seen her. There is evidence tending to show that the fireman and engineer, from their elevated position, might have seen the children from the time they left their back gate, had they been on the lookout. The engine was going very slowly, and it appears that it might readily have been stopped in time had the engineer had warning in time. If Tilly Cadmus is to be believed, then it is clear from the whole testimony that the real cause of the accident was the carelessness of the defendant's servants in not ringing the bell, in consequence of which the children did not know the engine was coming round the curve, and the negligence of the men on the engine in not keeping a good lookout, as they were bound to do in approaching so dangerous a place in which children were likely to be. The defendant's own witness, Whalen, testifies that he had observed children about the point of danger as the locomotive moved towards Clark Avenue pushing the cars, and he even says he saw the children about this place on his return. The point of danger was only a lane fifteen feet long. If the bell had been sounded, the children might have paused. If the lookout had been kept and the children seen, the engine should have waited for them to pass this point. They ran some danger and took some risk; but it was for the jury, under proper instructions, to say whether they were negligent, and

whether, if they were, their negligence, rather than that of the defendant, was the cause of the accident.

There was, we think, some substantial evidence to warrant the finding. We must presume that proper instructions were given to the jury, so far as they were asked, and, under the circumstances, it is our duty to affirm the judgment.

The appellant calls our attention to the fact that the action is by next friend, and that the answer denies all the allegations of the petition. This, it says, raises an issue as to the appointment of the next friend, as to which there is no testimony whatever. There was oral testimony tending to show the appointment of Sullivan as next friend of the plaintiff, which was admitted without objection. We need not examine its sufficiency. The question is said by the supreme court to be one of the defect of parties, which must be raised by demurrer or by a special denial, and which, if not so raised, is waived. *Rogers* v. *Marsh*, 73 Mo. 64.

The judgment is affirmed. All the judges concur.