OF THE

# STATE OF MISSOURI

AT THE

APRIL TERM, 1906.

(*Continued from Volume 197.*)

ARTHUR BAXTER, by Curator, v. ST. LOUIS TRANSIT COMPANY, Appellant.

In Banc, June 20, 1906.

1. **ABATEMENT: Incapacity to Sue: Pleading.** Plaintiff's right to maintain the suit is not put in issue unless his 'incapacity is specially pleaded. And a special denial in such case is in the nature of a plea in abatement. But that plea, if not apparent on the face of the petition, is required to be made in the one answer.

2. ——: ——: ——: **Under Code: Waiver.** Matters in abatement and matters in bar are as essentially different under the Code as they were at common law. The effect of matters in abatement is the same under both systems; if the plea is sustained, it abates that suit without affecting the cause of action. But at common law the plea in abatement and the plea in bar were required to be separate; under the Code, they must be made in the same answer, unless the matter in abatement is apparent from the face of the petition, and then it can be raised by special demurrer, but not by general demurrer. It can in no case be raised by a general denial.

3. ——: ——: ——:. **No Proof: Waiver.** Where the petition alleges that a certain named person is the lawfully appointed and duly qualified curator of the plaintiff, and there is no specific denial of that averment it will be taken as admitted, whether proof was introduced to sustain it or not.

198 Sup—1                                                                (1)

Baxter v. St. Louis Transit Co.

4. ——: ——: ——: ——: How Raised. Where plaintiff assumes to sue in a representative capacity, that capacity can be put in issue in only two ways: first, if in the body of the petition facts sufficient to constitute the capacity are not stated, the issue may be raised by special demurrer; second, if the facts to constitute the capacity are sufficiently stated, they may be put in issue by a special denial. The issue is not raised in either case by a general demurrer or a general denial. And if not raised in one of the ways pointed out, plaintiff need not introduce proof of the appointment of the next friend or curator.

5. NEGLIGENCE: Contributory: Rear-End Collision. Plaintiff, a boy twelve years old, was sitting on the seat of an ice wagon being driven by a boy of eighteen. According to plaintiff's evidence the wagon was driven a few inches from the outside rail of the street railway track for several hundred feet at the rate of seven or eight miles an hour, and while being so driven defendant's car, without any ringing of the bell or an attempt to stop, although running at a rate of twenty-five miles an hour, ran into the wagon from behind, and plaintiff was thrown off and under the car. According to defendant's evidence, the wagon was seen by the motorman, it was not then within the danger line, the bell was being rung and the wagon turned suddenly towards the track when the car was close to it and in consequence it was struck. *Held*, that, conceding that plaintiff was guilty of negligence in not keeping a lookout for the car, conceding that the driver was guilty of negligence in driving so close to the track that the car could not pass without striking the wagon, and conceding, for the sake of argument, that the negligence of the driver was imputable to plaintiff, that negligence of plaintiff or of the driver afforded no warrant to defendant to collide with the wagon and to injure plaintiff, and the plaintiff's right to recover is not barred by contributory negligence, for the motorman could have seen the wagon for 600 feet before his car struck it, and that the driver was making no attempt to get it out of danger, and yet made no attempt to avoid the collision by sounding the bell or stopping the car.

6. ——: Second Injury: Inconsistent Instructions. Instructions discussed in the opinion which told the jury that plaintiff could not recover for a second breaking of his leg long after the first accident, if that breaking was due to his own negligence, are not conflicting or inconsistent.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge.

AFFIRMED.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

(1) The demurrer to plaintiff's evidence should have been sustained. (a) There was no evidence of the appointment or qualification of a curator to maintain the suit, or that the suit was prosecuted by a curator. Porter v. Railroad, 60 Mo. 160; Casler v. Chase, 160 Mo. 424; Cohn v. Railroad, 182 Mo. 577. (b) If plaintiff or his fellow-servant, Davis, had looked or listened for the car it could have been seen and the injury would have been averted. That negligence directly contributed to the injury and should bar recovery. Neither was there any evidence that defendant was negligent. Becke v. Railroad, 102 Mo. 550; Dickson v. Railroad, 104 Mo. 504; O'Rourke v. Railroad, 142 Mo. 352; Payne v. Railroad, 129 Mo. 419; Watson v. Railroad, 133 Mo. 250; Peterson v. Railroad, 156 Mo. 552; Holwerson v. Railroad, 157 Mo. 216; Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Hook v. Railroad, 162 Mo. 569; Moore v. Railroad, 176 Mo. 528; Ries v. Railroad, 179 Mo. 1; McGauley v. Railroad, 179 Mo. 583; Petty v. Railroad, 179 Mo. 666; Reno v. Railroad, 180 Mo. 369; Roenfeldt v. Railroad, 180 Mo. 554; Markowitz v. Railroad, 186 Mo. 350; Holden v. Railroad, 76 S. W. 973; Bricknell v. Railroad, 120 N. Y. 290; Miller v. Railroad (Ind.), 27 N. E. 359; Donnelly v. Railroad, 109 N. Y. 16; Griffith v. Railroad, 44 Fed. 574; Stafford v. Oskaloosa, 57 Iowa 749; Miner v. Railroad, 153 Mass. 398; Schorn v. Railroad (N. Y.), 3 Am. Neg. Rep. 62; Railroad v. Kestler, 12 Am. Neg. Rep. 343; Nesbitt v. Town of Garner, 75 Iowa 304; Borough of Carlisle v. Brisbane, 113 Pa. St. 552; McCormack v. Railroad (N. Y.), 2 Am. Neg. Rep. 631; Shear. and Redf. on Negligence (2 Ed.), sec. 66a, note 1. (2) The court erred in giving plaintiff's instruction 1. Holwerson v. Railroad,

157 Mo. 216; Tanner v. Railroad, 161 Mo. 497; Moore v. Railroad, 176 Mo. 528; Reno v. Railroad, 180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; Markowitz v. Railroad, 186 Mo. 350; also authorities under point 1. (3) The court erred in giving plaintiff's instruction 2. Authorities cited under points 1 and 2. (4) The court erred in giving plaintiff's instruction 3. Authorities cited under point 5, infra. (5) Plaintiff's instruction 5 is erroneous. Daugherty v. Railroad, 19 Mo. App. 418; Brown v. Railroad, 20 Mo. App. 222; Kincaid v. Railroad, 62 Mo. App. 371; Siekinger v. Manufacturing Co., 129 Mo. 590; Hadley v. Transfer Co., 115 Mass. 308; Lynn Gas Co. v. Ins. Co., 158 Mass. 570; Railroad v. Johnson, 92 Ala. 204; Haley v. Railroad, 21 Ia. 15; Railroad v. Rose, 11 Neb. 177; Railroad v. Valleley, 32 Ohio St. 345; Railroad v. Spirk, 70 N. W. 926; Hadley v. Boxendale, 9 Exch. 341; Pullman Car Co. v. Barker, 4 Colo. 344; Frazier v. Railroad, 81 Ala. 185; Butler v. Kent, 19 Johns. 228; Sheffer v. Railroad, 105 U. S. 252; Hobbs v. Railroad, 10 L. R. Q. B. 111; Cooley on Torts, (2 Ed.), pp. 73, 74; 1 Sutherland, Damages, 62; 1 Chitty on Pleadings, 388. (6) Plaintiff's instructions are repugnant to those given on behalf of defendant and are irreconcilably inconsistent therewith.

*James M. Sutherland* for respondent.

(1) Defendant did not properly raise the issue by answer, hence it was not necessary for plaintiff to prove the appointment of a curator. Taylor v. Pullen, 152 Mo. 439; Rogers v. Marsh, 73 Mo. 70; Clowers v. Railroad, 21 Mo. App. 216; Randolph v. Railroad, 18 Mo. App. 614; Lyddon v. Dose, 81 Mo. App. 69; Jones v. Steel, 36 Mo. 325; Sherman v. Railroad, 72 Mo. 63. (2) "Where from the facts found or agreed upon, the question of negligence is one about which reasonable minds may differ, it should be left to the jury to make the deduction from all the circumstances, to determine the

ultimate fact." Tabler v. Railroad, 93 Mo. 79; Barry v. Railroad, 98 Mo. 62; Pierce on Railroads, p. 316; Dickson v. Railroad, 104 Mo. 495. The negligence of the driver in this case, he not being in the employ under the control of plaintiff, cannot be imputed to plaintiff. This seems to be now the settled doctrine in England and the United States. Becke v. Railroad, 102 Mo. 544; Land Co. v. Mingea, 89 Ala. 521; Borough of Carlisle v. Brisbane, 113 Pa. St. 552; Mills v. Armstrong, L. R. 13 App. Cas. 1. There is no question raised either in the pleadings or evidence that defendant's servants could not have stopped the car to have avoided a collision, but on the contrary defendant especially evades this issue by stating that the wagon "suddenly turned in toward the track when the car was so close they could not avoid a collision." Klockenbrink v. Railroad, 81 Mo. App. 351; McAndrews v. Railroad, 83 Mo. App. 233, 98 Mo. App. 97; O'Keefe v. Railroad, 81 Mo. App. 386; Cooney v. Railroad, 80 Mo. App. 226; Morgan v. Railroad, 159 Mo. 262; Hutchison v. Railroad, 88 Mo. App. 376; Edwards v. Railroad, 94 Mo. App. 91; Meyers v. Railroad (Mo. App.), 73 S. W. 379. (3) The plain reading of defendant's first instruction leaves the question of plaintiff's negligence to the jury. When the instruction is read with 7, 8, 9, 10, 11, and 12, given in behalf of defendant, the jury must have had a very clear idea as to what constitutes negligence on the part of plaintiff. (4) The defendant submitted the question of the re-breaking of the leg to the jury in instructions 2, 3, 4 and 5. There the jury were plainly told by the court that if there had been even a partial bony union and the second breaking was the result of plaintiff's negligence, then he could recover no damages by reason of such re-breaking.

VALLIANT, J.—Plaintiff, a minor, received personal injuries in a collision with a street car which was being operated by defendant and sues to recover dam-

ages for the injuries, alleging that the collision was the result of the negligent operating of defendant's street car. He recovered a judgment for $4,750, and defendant appealed.

I. Before entering into a consideration of the merits of the case there is a question at the threshold that demands our attention.

The petition alleges that the plaintiff is a minor and that the St. Louis Trust Company, by whom as his curator he sues, is his legally appointed and duly qualified curator, that the defendant is a corporation operating a street railroad, then it proceeds to state the cause of action. The answer of the defendant was a general denial and a plea of contributory negligence. At the trial there was no proof of the appointment of the alleged curator. It is contended by defendant that the failure of proof on that point is fatal to the plaintiff's right of recovery.

At common law the character in which the plaintiff sued was not put in issue unless specially denied. [1 Chitty on Pl. (16 Am. Ed.), p. 464.] In such case a special denial was in the nature of a plea in abatement. [Stephens on Pl. (1894), p. 467.] Such a plea, if sustained, did not bar the cause of action, but abated that suit. The character in which the plaintiff assumes to sue is entirely distinct from the cause of action alleged; for example, a plaintiff assuming to be the administrator sues to recover a debt due the estate, he may not be the administrator and therefore not entitled to maintain the suit, yet a judgment that the plaintiff in that suit is not the administrator would be no bar to an action to recover the same debt when the true administrator should sue. And that is as true under our Code of Procedure as it was at common law. In so far as the science of pleading rests on sound reason for its rules there is no difference between our system and the system of common law pleading, the conclusions of reason and common sense are the same, but in each system

there are arbitrary rules and the difference between the two systems appears in those rules. For example, it is neither illogical nor unreasonable, nor a violation of any scientific principle, to allow a defendant to plead in abatement of the suit and in bar of the action at the same time; there is nothing inconsistent or contradictory in those pleas with each other, both may be true or one may be true and the other not, and there is no difficulty in shaping the judgment to suit the facts as they may be found on the trial. Yet the common law rule is that the two pleas cannot stand together, but under the Code system the defendant not only may but is required to plead them both in one answer if he intends to avail himself of both. The rule on this point is thus stated in Bliss on Code Pleading (3 Ed.), sec. 345: "In common law pleading we have the rule that 'pleas must be pleaded in due order;' that is, the dilatory pleas must be first made and disposed of, to be followed by pleas in bar. The Code requires the defendant either to demur or answer, and in his answer he is allowed to set up as many defenses as he may have. Only one answer is contemplated, and all the defenses which he elects to make must be embraced within it." Matters in abatement and matters in bar are as essentially different under the one system as under the other, and the effect of matters in abatement is the same under both systems, that is, if the plea is sustained it abates that suit without affecting the cause of action, the only difference is that at common law it is called a plea in abatement and must be disposed of before defendant pleads to the merits of the action, while under the Code it goes under the general name of defense and may be pleaded in the same answer with a plea to the merits. The author just quoted, discussing the effect of an insufficient statement in the petition of the character in which the plaintiff sues, and holding that such defect is not reached by a general demurrer, says: "It is but reasonable, then, that the statute should require the defendant, if he

objects to the plaintiff's demand because he does not show a right to appear in court, to base his objection specifically upon that ground; and I know of no comprehensive phrase that so well describes the ground of objection as a want of legal capacity to sue." [Bliss on Code Pl. (3 Ed.), p. 620, sec. 408.] In other words, if the capacity in which the plaintiff assumes to sue is defectively stated, the defect cannot be reached by a general demurrer, which goes to the cause of action, but it requires a special demurrer.

Pomeroy, a strong friend of the code system, after first pointing out the distinction between a plea in abatement and a plea in bar in respect of the order in which they were required to be pleaded, says: "There are in the new procedure no such divisions and classes. Defenses still exist of the same essential nature as those which were formerly set up by means of a plea in abatement, and a judgment thereon in favor of the defendant does not forever bar the plaintiff from the further prosecution of his demand." [Pomeroy Code Rem. (4 Ed.), pp. 799-800.] The learned law-writer, although he regards the Code as in itself a complete system depending for nothing upon the common law (Id. p. 541, sec. 409), yet in the words just quoted he recognizes fully, as it is recognized at common law, the essential difference between matters that may be pleaded to abate the suit, and matters pleaded to defeat the cause of action, the only difference between the Code and the common law in respect to them being the manner and the order in which they are pleaded and the issues tried. And on pages 813-14, he says: "The nonjoinder of necessary parties cannot be proved under the general denial . . . The defense that the plaintiff is not the real party in interest is new matter . . . and in an action by an executor or administrator, the general denial does not put in issue the plaintiff's title to sue."

As we have already above shown, when a plaintiff

sued at common law in a representative capacity, as executor or such like, and defendant, without any denial of the plaintiff's alleged character, filed his plea to the merits of the action and went to trial, he was presumed to have admitted the character assumed by the plaintiff.

There was no injustice to the defendant in that rule of pleading for if he really intended to question the matter he could by a special plea require the plaintiff to produce the proof. It is the boast of the advocates of the Code system that it is designed to reach more quickly the merits of a controversy by cutting away from the unnecessary forms and technicalities of the common law, but if our system puts the plaintiff to such proof when it is not specially called for by the defendant's answer we are more formal and technical than were our common law predecessors.

Missouri was the first State in the Union to adopt the Code system; it was adopted in this State in 1849. When we turned away from our common law precedents and adopted an entirely new system, it will not be a matter of surprise if the examination of our earlier cases shows a construction placed on the new statute which has not since been followed. In Gilmore v. Morris, 13 Mo. App. 114, a judgment in favor of an administrator was reversed and the cause remanded for retrial because the plaintiff introduced no evidence to show that he was the administrator; the answer in that case was a general denial and the court held that the answer put the fact in issue and that without proof that the plaintiff was administrator there could be no judgment in his favor. The court referred to State to use v. Price, 21 Mo. 434, and seemed to base its conclusion on the decision in that case; but that case does not so hold. The record in that case does not show what the answer was, the inference would be that it put the plaintiff's capacity in issue, because there was evidence introduced on the point, but the defendant contended that the evidence was not sufficient. The plaintiff had sued as adminis-

trator *de bonis non,* but his letters were in the form of letters of an original administrator; the court held that the evidence was sufficient. It was a question of evidence that was decided in that case, not of pleading.

Cadmus v. St. Louis Bridge & T. Co., 15 Mo. App. 86, was the case of a minor suing by next friend; the answer was a general denial, there was some oral evidence of the appointment of the next friend, but the court said it was not necessary to pass on the question of the sufficiency of the evidence, because, it said: "The question is said by the Supreme Court to be one of defect of parties, which must be raised by demurrer or by a special denial, and which, if not so raised, is waived," and in that connection the court cited Rogers v. March, 73 Mo. 64. Thus the Court of Appeals very early overruled, in effect, its decision in Gilmore v. Morris, above mentioned.

In Randolph v. Railroad, 18 Mo. App. 613, plaintiff, a minor, sued by his next friend, no proof was offered of the appointment of the next friend, the court said that if the fact had been properly put in issue a failure to prove it would have been fatal to recovery, but the court, per PHILIPS, P. J., said: "The answer, however, only tendered the general issue. This was not sufficient to raise the issue in question. The objection involves merely the capacity of the plaintiff to sue. Such issue at common law could only be presented by plea in abatement under such circumstances. [1 Chitty, Plead. (16 Am. Ed.), 464.] Under the Code, if the incapacity to sue appears on the face of the petition, advantage of it may be taken by demurrer. [Sec. 3515, R. S. 1879.] In such case the demurrer must be special, not general. [Sec. 3516.] If the defect does not appear on the face of the petition, it must be raised *specially* by answer; otherwise, it is deemed to be waived. [Sec. 3519.]" The law as there expressed has never been questioned by this court.

Clowers v. Railroad, 21 Mo. App. 213, was also that

of an infant suing by next friend, the answer was a general denial and plea of contributory negligence, no proof was made of the appointment of the next friend, and defendant contended on authority of Porter v. Railroad, 60 Mo. 162, that judgment for plaintiff should for that reason be reversed; the court, per ROMBAUER, J., said: "Such, unquestionably, was the effect of that decision. But in the later case of Rogers v. March, 73 Mo. 70, it was held that this objection is one for defect of parties plaintiff, and is waived under the statute unless saved by special demurrer, or by answer. This last decision is not only in conformity with the more liberal views marking recent decisions, which disregard purely technical objections in arriving at the true merits of a controversy, but is furthermore the last controlling decision of our Supreme Court on this question, and as such is binding upon us." Other decisions of our Courts of Appeals are to the same effect. [Ellingson v. Railroad, 60 Mo. App. 679; Lyddon v. Dose, 81 Mo. App. 64.]

We go now to the decisions of this court on this subject. In Jones v. Steele, 36 Mo. 324, the petition in its caption named the plaintiff a minor suing by his next friend, but in the body of the petition there was no averment of such appointment, defendant answered to the merits only; this court, per WAGNER, J., said: "The defect in the petition was apparent upon its face; the caption forms no part of it. To have made it regular, there should have been a substantive averment or allegation that an appointment of next friend was duly made in the mode pointed out by law; and in the omission of such averment, the petition was demurrable. The defendant also had his election to raise the objection by answer, if he saw fit to do so. But when he did not avail himself of his privilege, either by demurrer or answer, he is deemed by our statute to have waived all objections, excepting only the objection to the jurisdiction of the court over the subject-matter, and that the

petition does not state facts sufficient to constitute a cause of action."

In Porter v. Railroad, 60 Mo. 160, plaintiff, a minor, sued by next friend, but on the trial he made no proof of the appointment; the court, per NAPTON, J., said: "The judgment in this case must be reversed, because the petition alleges the minority of plaintiff, and the appointment of a next friend by the circuit court of Buchanan county, which allegations are denied in the answer, and no proof was offered on the subject. The point was raised in the circuit court by a demurrer to the evidence." That is all that appears in the report of that case on this subject. It is there said that the allegations of minority of the plaintiff and the appointment of the next friend "are denied in the answer," and after that it is said that the point was raised by demurrer to the evidence. Whether the allegations were specifically denied does not appear in the opinion in that case, but judging from the date of the opinion (it was rendered at the May term, 1875), we may presume that there was a specific denial, because it was not until March 18th, 1875, that the statute was amended so as to allow a defendant to plead by a general denial. [Laws 1875, p. 106.] When the answer in that case was filed the law allowed no denial on any point except a specific denial.

In Sherman v. Railroad, 72 Mo. 62, the plaintiff, a minor, sued, as the petition alleged, by his guardian duly appointed, the fact of the appointment was specifically denied in the answer and there having been no proof of the appointment the court, per HOUGH, J., said: "Following the decision of this court in the case of Porter v. Railroad, 60 Mo. 160, the judgment must, for this cause, be reversed." Neither of those two cases is authority for holding that a general denial puts the fact of the appointment of the guardian or next friend in issue.

The first case in which the precise question we now

have came before this court for decision was Rogers v. March, 73 Mo. 64, in which case this court, per NAPTON, J., (who also wrote the opinion in the Porter case, above mentioned), said: "It is also claimed that as the answer denied each material allegation of the petition, and as no evidence was offered to show the appointment of the next friend for the two of the plaintiffs who are minors, the judgment should be reversed. This is virtually an objection that the proper parties are not made plaintiffs, and such objection, if not made either by demurrer or answer, is waived under the statute and cannot be made in the motion in arrest. The answer should have set this matter up, and it not having been done, the objection now made cannot be considered. Judgment affirmed, in which all concur."

In Holton v. Towner, 81 Mo. 360, one of the plaintiffs was a minor, and just how his capacity to sue was stated in the petition the report of the case does not show, but the answer, besides a general denial, contained also an allegation that the plaintiff was a minor and had no legal capacity to sue; the trial court during the trial appointed a next friend for him and judgment was rendered in his favor; this court, per HOUGH, C. J., said: "But treating this appointment as a nullity, the judgment could not be reversed on that ground, as the statute expressly provides that no judgment shall be reversed because an infant appeared by attorney when the judgment is in favor of the infant. [R. S. 1879, sec. 3582.]"

In Taylor v. Pullen, 152 Mo. 434, the cases of Rogers v. March, and Clowers v. Railroad, above mentioned, are cited with approval and the language of Judge ROMBAUER in the last-named case is quoted and approved as stating correctly the law on this point. Casler v. Chase, 160 Mo. 418; Cohn v. Railroad, 182 Mo. 577, and Gregory v. McCormick, 170 Mo. 660, are in accord with these views.

The foregoing are all the decisions on this question in this State, so far as our research has brought them to our notice.

Our conclusion is that under sections 598, 599, and 602, Revised Statutes 1899, when a plaintiff assumes to sue in a representative capacity, that capacity can be put in issue in two ways only: first, if in the body of the petition facts sufficient to constitute the capacity are not stated, the issue may be raised by a special demurrer; second, if the facts to constitute the capacity are sufficiently stated, they may be put in issue by a specific denial, but the issue is not raised in either case by a general demurrer or a general denial.

It being averred in the petition in this case that the St. Louis Trust Company was the lawfully appointed and duly qualified curator of the plaintiff and there being no specific denial of that fact, it must be taken as admitted. The court did not err therefore in refusing the instructions asked by defendant in the nature of a demurrer to the evidence because of failure of proof on that point.

II. From the opinion in this case delivered by MARSHALL, J., in Division One, we copy the following statement of the facts and conclusions of law governing them and adopt them as our own:

"Arsenal street runs east and west. Grand and Spring avenues run north and south, and are nine hundred feet apart without any intervening street. From Grand avenue westwardly Arsenal street has a down grade for seven hundred feet, and then an up grade towards Spring avenue. The street is straight from a point one or two blocks east of Grand avenue to Spring avenue. The defendant has a double street car track on Arsenal street. The west-bound cars run over the north track, and the east-bound cars over the south track. At the time of the accident the plaintiff was twelve years of age, and was employed by Isaac Davis to assist Al-

fred Davis, the latter being eighteen years of age, in delivering ice. Davis drove the wagon and the plaintiff delivered the ice from the wagon to the customers. The wagon was covered; with a seat at the front, upon which the plaintiff and the driver were seated, and the back of the seat extending to the top of the covering. In the back of the seat was a moon-shaped opening for the purpose of looking backwards. The curtain at the rear of the wagon was torn, so that the driver or persons on the front seat could look through the opening in the back of the front seat, and see objects approaching from the rear. On the morning of the accident the plaintiff and the driver came north on Grand avenue, and thence proceeded westwardly on Arsenal street, on the north side of the street, and north of the street car tracks. As they turned into Arsenal street the plaintiff looked east to see if a car was coming, but saw none. They drove west about one hundred to one hundred and fifty feet, at a distance of five or six feet from the north rail of the west-bound track. At this point there were some ruts or little holes in the street next to the curb, and they turned the wagon in toward the track to within four or five inches of the north rail, and in that position continued to drive westwardly for about six hundred feet. As they turned in toward the track the plaintiff again looked for a car and saw none. They heard no car and no bell. The wagon was proceeding at a rate of six or eight miles an hour. The street was slightly muddy, and the wagon did not make much noise. The noise made by a car in motion could be heard there for a block. When they had thus proceeded about seven or eight hundred feet west from Grand avenue, one of the defendant's cars going westwardly, struck the hind wheel of the wagon, threw the plaintiff out of it, and the wagon passed over the plaintiff's left leg, causing a compound, comminuted fracture of the left femur. A passenger on the car testified that he saw the wagon when the car was two or three car-lengths

from it; that in his opinion the car was running at a
speed of twenty-five miles an hour; that he did not hear
any gong rung, nor did he see the motorman make any
effort to stop the car.   Similar testimony was given
also, through an interpreter, by a Bohemian.  The mo-
torman testified that when he crossed Grand avenue
he saw the ice wagon ahead of him, but that it was not
in the danger line at that time, and was four or five or
six car-lengths ahead of him when he first noticed it;
that he was ringing the gong, and that, 'all at once the
horse turned right in towards the track, and I seen at
once there that I had to make a stop, and I reversed my
car at once and put the brake on a little bit to help stop
the car, and I stopped just as the wagon was against
the side of the car, the hub.'    The testimony for the
plainttiff showed that the car stopped with the rear of
the car at the front of the wagon.   The motorman fur-
ther testified that there was but a slight concussion, but
that the horse got scared, he did not know whether
from the concussion or   the ringing of the gong, and
turned around and galloped over the hill after throw-
ing the occupants out; that he made 'a splendid stop,
could not make a better stop.'   On cross-examination he
testified that the horse was turned close to the track
when the car was about two car-lengths, 'may be a little
less, from it.'

"Plaintiff was taken to a hospital, where his leg
was temporarily dressed, and thence he was taken to
St. Mary's Infirmary, where he was attended by Dr.
Amyx.   His leg was placed in a plaster of paris cast
and remained there for five months.  The case was then
removed, and a Hogden splint put upon the leg, and
two weeks later the plaintiff was sent home.  His physi-
cian advised him to use his leg occasionally but to use
it very carefully.   During all this time there were two
running sores on his leg, which were constantly treated.
When the plaintiff left the hospital the injured leg was
straight, but about one-half an inch shorter than the

other, and he was beginning to walk along the floor without crutches. A few days after returning home, when he was out in the yard with his crutches, he saw a lemon peel on the walk, and asked his sister to hand it to him. He then threw the lemon peel a distance of about fifteen feet from him. As he did so he heard something in his leg snap. He was taken into the house, and in a short time went to see Dr. Amyx, who told him to go home, and stay in bed for a week. During the week, when the doctor came, and while manipulating the leg, it snapped again, and the doctor told him that he would have to stay in bed for a long time, as the leg was broken again. Plaintiff remained in bed thirteen weeks, when the leg began to grow crooked, the foot turning in. He was then taken again to the hospital, subjected to an examination, and operated upon, by having the ends of the bones cut off and the bones fastened together, and the leg was again put into a plaster cast, where it was kept about eleven weeks, when he was again removed to his home. Since that time an examination by means of an X-ray apparatus disclosed that only about a quarter of an inch of the bone came in contact, where naturally the contact should be an inch and a half; and he has since been compelled to wear an iron brace, extending from the foot to the waist, which, if taken off, would cause the bones to separate; that the leg is three inches shorter than the other, and the toes of the wounded leg turn inward and hang in front of the other leg; that up to the time of the trial, twenty-two months after the injury, he was still unable to touch his foot to the floor, and had to wear the iron brace aforesaid, and could only move about on crutches.

"There is a sharp conflict in the evidence as to whether or not there had been, or could have been, a bony union prior to the second injury resulting from the throwing of the lemon peel. Dr. Broome, who examined the plaintiff's leg with an X-ray, in February,

1903, testifies that it would have been impossible for a bony union to have been accomplished before the second occurrence, owing to the fact that there were running sores on the leg at the fractured point, which prevented a bony union. Drs. Berry, Hutton and Baskett, witnesses for defendant, on cross-examination testified that on the hypothetical case stated, they did not believe there could have been a bony union. On the other hand, Dr. Amyx gave it as his opinion that when the plaintiff was sent home the first time from the hospital, a bony union had been effected. And Drs. Rodes and Cave, witnesses for defendant, gave it as their opinion that a bony union had resulted after the first fracture, and further said that the plaintiff could not have walked, as he did before the second injury, if there had been no bony union.

"The court gave five instructions at the request of the plaintiff. The third related to the measure of damages. The fifth was as follows: 'The jury are further instructed that if you find from the evidence that the plaintiff was exercising ordinary care or such care as would be exercised by a boy of his age and experience for the protection of his injured leg, under like circumstances, at the time the bones of his left femur separated or broke at the original point of breaking, on the occasion of his throwing a lemon peel as detailed in the evidence; then you are further instructed that the plaintiff is entitled to recover for all damages which you believe from the evidence he has or will sustain (as explained in instruction number 3), notwithstanding you may further find that a partial bony union had taken place at the time of the second breaking or separation.'

"At the request of the defendant the court gave twelve instructions. The 2nd, 3rd, 4th and 5th related to the second breaking, or injuring, and instructed the jury that the defendant was not liable for any damages the plaintiff might have suffered by reason of the sec-

ond injury if it was caused by the negligence of the plaintiff, but that before they could allow the plaintiff any damages on account of the second injury they must be convinced from the evidence that such condition was due to the first injury, and that they could not resort to guess, conjecture or speculation to determine whether such subsequent condition was a consequence of the first, or second injury, but must be controlled by the evidence in the case.

"At the close of the plaintiff's case, the defendant asked an instruction for a nonsuit. The court refused to give the instruction, and the defendant excepted. At the close of the whole case, the defendant asked the court to instruct the jury to find for the defendant, for the reason that the plaintiff had failed to prove that he was suing by a curator or next friend, and that according to the record in this case he had neither a curator nor a next friend, and that the plaintiff had failed to prove that he was injured as a result of defendant's negligence, and because he had shown that his injury was due to his own negligence; also on the ground that the testimony showed that plaintiff was a minor, under fourteen years of age, and that no guardianship had been proved; and further asked the court to instruct the jury if they found that any of the damages resulted from the second injury they should state the amount so found on that account. The court refused to so instruct, and the defendant excepted.

"The next error assigned is the giving of plaintiff's instruction number 5. That instruction authorized the plaintiff to recover for all the injuries, physical pain and mental anguish suffered by the plaintiff in consequence of the second breaking, as well as in consequence of the first, if at the time of the second breaking the plaintiff was exercising ordinary or such care as would be exercised by a boy of his age and experience for the protection of his injured leg.

"The 2nd, 3rd, 4th and 5th instructions given for the defendant told the jury that the plaintiff could not recover for the injuries resulting from the second breaking of the leg if those injuries resulted from his own negligence, after the original injury was received.

"It is now claimed that the fifth instruction for the plaintiff, and those for the defendant are in hopeless conflict, and that if the jury undertook to follow the one they had to disregard the other. A careful analysis of the instruction, however, does not bear out the contention. Both sides put the case to the jury upon the theory that the plaintiff could not recover for the injuries, pain and anguish resulting from the second breaking if they were caused by his own negligence. There was, therefore, no conflict in the instructions. The case was not tried below upon the theory that the second breaking and the suffering and anguish and injuries resulting therefrom, were not the necessary and natural consequence of the first injury; nor was the case tried below upon the theory that the petition did not count upon any damages resulting from the second injury; nor that such an issue was not tendered or joined in the case. Neither was there any objection or exception made or saved to the evidence as to the second breaking and the subsequent injuries. As shown by the instructions on both sides, the case was tried by both parties on the theory that the plaintiff could recover for the second breaking if it was not caused by his own negligence.

"There was, therefore, no conflict between the instructions given. The instructions asked by the defendant, and refused by the court, were fully covered by the instructions given for the defendant by the court, or else were in conflict therewith, and hence were properly refused.

"III.  Lastly it is contended that upon the case made, the plaintiff is not entitled to recover at all, be-

cause, even conceding that the defendant was guilty of negligence, the plaintiff was guilty of contributory negligence, which bars his recovery.

"This objection is wholly untenable. Even conceding that the plaintiff was guilty of negligence in not keeping a lookout for the car, and conceding that the driver, Davis, was guilty of negligence in driving so close to the track that a car could not pass without striking the wagon, and conceding, for the sake of the argument, that the negligence of the driver of the wagon is imputable to the plaintiff, nevertheless, that negligence of the plaintiff or of Davis afforded no warrant or authority whatever to the defendant to collide with the wagon, and to inflict injury upon the plaintiff. This was a rear end collision. The motorman could have seen the wagon for at least six hundred feet before he collided with it. If the testimony of the plaintiff is true, and for the purposes of this discussion it must be taken as true, the wagon was driven for a distance of six hundred feet, with its left wheels within five or six inches, or a foot, to a foot and a half, according to the various testimony, of the north rail of defendant's track. The plaintiff's testimony tends to show that the car was running at a speed of twenty-five miles an hour, on a down grade; that no bell or gong was sounded, and that the motorman made no effort whatever to check the speed of the car, until the collision occurred. Conceding that the defendant's motorman had the right to assume that the plaintiff or the driver of the vehicle would keep a lookout to the rear for the approach of a car, and would drive far enough away from the track to avoid a collision, and that they failed so to do, the fact still remains that, according to the testimony for the plaintiff, the motorman saw, or could have seen, in ample time to have prevented the collision, that the plaintiff or the driver of the vehicle was making no attempt to get out of the place of danger, in which he was, and yet the motorman made no effort to prevent

the collision. This case is very similar to the case of Schafstette v. Railroad, 175 Mo. 142. In that case it was said: 'It is not true as a matter of law, and prima-facie cannot be true as a matter of fact, that it is negligence for a citizen to cross or drive upon and along a street car track when a street car is five hundred feet away, although it may be coming in the same direction, and running at the speed of five, ten or even more miles an hour, when the track is straight and the operator of the car can easily and plainly see that such person is in such a position. In such case, particularly where the citizen turns onto the track and drives upon or close to it, with his back to the approaching car, it is the duty of the operator to check the car and avoid the accident; and if a collision occurs it is prima-facie if not altogether owing to the negligence of the operator of the car.'

"The case was tried below by the plaintiff upon the theory stated in the petition, of a high and dangerous rate of speed, of a failure to sound the gong, and of a failure to stop the car in time to have avoided the injury, when, by the exercise of ordinary care, it might have been done, after the motorman saw the position of peril of plaintiff; and on the part of defendant it was tried on the theory that the wagon was not in a position of danger until the car got within two or three car-lengths of it, when the horse was suddenly turned towards the track and so close to it as to make a collision inevitable, and when it was impossible to stop the car in time to avoid the collision. The jury found the issues for the plaintiff. There was certainly abundant evidence to support the theory of the plaintiff, and therefore the court committed no error in refusing to take the case from the jury."

We find no error in the record and the judgment is therefore affirmed. All concur.